UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARYANNE DINEEN,<br>    Plaintiff<br><br>v.<br><br>DORCHESTER HOUSE<br>MULTI-SERVICE CENTER, INC.,<br>    Defendants | C.A. No.: |

## COMPLAINT

### Notice of Action

This is an action under the False Claims Act, 31 U.S.C. §§ 3730(h) and Massachusetts common law with respect to wrongful termination. Defendant Dorchester House Multi-Service Center, Inc. ("Dorchester House") terminated Plaintiff, Maryanne Dineen, an experienced financial manager and twelve year employee of Dorchester House, because she corrected and reported to the Dorchester House CEO fraudulent Medicare Part B billing practices of Dorchester House.

### Jurisdiction

1. Jurisdiction of this Court is proper under 28 U.S.C. 451, 1331, 1337 and 1343. This Action is instituted in part under Section 31 U.S.C. §§ 3730(h) of the False Claims Act.

### Parties

2. Plaintiff Maryanne Dineen is a resident of Readville, Massachusetts.

3. Defendant Dorchester House is a Massachusetts nonprofit corporation with a principal place of business in Dorchester, Massachusetts.

1

## Statement of Facts

4. Defendant is a community health center that is one of five multi-service health centers in Massachusetts that are associated with hospital Boston Medical Center. The other four health centers are as follows: East Boston Neighborhood Health Center ("East Boston"); South Boston Community Health Center ("South Boston"); Codman Square Health Center ("Codman Square"); and Greater Roslindale Medical and Dental Center ("Roslindale") (collectively the "Centers").

5. The Centers provide similar services, serve similar communities and share common business and billing practices. For billing purposes, they are designated by Medicare Part B as "Outpatient Hospitals" because of their affiliation with Boston Medical Center. All Centers bill Medicare Part B under the Boston Medical Center hospital license.

6. Because of their almost identical needs, Defendant and Codman Square together pay a third party to manage their grant writing and information technology needs.

7. Defendant hired Plaintiff in 2001 as a patients account manager. Plaintiff was promoted to Director of Patient Accounts in 2008. Plaintiff's job duties were to coordinate all patient-related billing functions and assist in billing submissions to Medicare Part B, a payer fully funded by the federal government.

8. Plaintiff's personnel file reflects consistently positive reviews of her work.

9. On February 28, 2013, the patient account manager of Codman Square, Paul Baker, called Plaintiff to discuss certain billing practices of Codman Square that were being questioned by Medicare Part B. Baker inquired of Defendant's billing

practices for comparison because Codman Square and Defendant were similarly situated entities for those purposes.

10. Specifically, Baker and the Chief Financial Officer of Codman Square, Yi Jung, told Plaintiff that a Medicare Part B representative was investigating a patient complaint, during which she discovered that Codman Square was designating itself improperly in its billing to Medicare Part B.

11. According to the Medicare Part B representative, Codman Square had been improperly billing its "place of service" for Medicare Part B submissions as an "Office," rather than an "Outpatient Hospital." It was properly billing Medicare Part A as an "Outpatient Hospital," a designation required because of Codman Square's affiliation with Boston Medical Center and because Codman Square billed Medicare under the Boston Medical Center license.

12. The Medicare Part B representative told Codman Square that its self-designation in Medicare Part B billing constituted fraud, as "Office" designations receive higher payments for services than "Outpatient Hospital." The representative told Codman Square that it must correct its practice immediately and self-report the improper billing to the federal government to avoid penalty.

13. Upon learning this, Plaintiff immediately reviewed the Defendant's Medicare Part B claims for payment and discovered that Defendant was also self-designating its place of service as "Office" rather than "Outpatient Hospital," and that it had filed claims for payment to Medicare Part B with that improper designation. Plaintiff called Codman Square and asked them for as much information as they could provide to aid Plaintiff in remediating the fraud.

14. Over the following two days, Plaintiff took the following actions to investigate whether Defendant's Medicare Part B billing practices were fraudulent:

   a. Plaintiff called the Medicare Part B representative who had discovered Codman Square's improper billing and left voice messages so she could discuss Defendant 's billing practices with the representative and learn what the best course of action would be to remediate Defendant 's improper billing practices.

   b. Plaintiff called East Boston and South Boston to gather more information on what the proper place of service designation should be for these similarly situated health centers.

   c. Plaintiff spoke with the East Boston patient account manager, who told her that East Boston had been properly billing Medicare Part B as an "Outpatient Hospital", and advised Plaintiff to immediately correct Defendant's error and self-report to Medicare Part B in an effort to limit Defendant's damages in paying back the amount Medicare Part B had overpaid Defendant and avoid a large fine.

   d. Plaintiff spoke with South Boston, whose patient account manager also advised Plaintiff that it too properly billed Medicare Part B as an "Outpatient Hospital".

   e. Plaintiff spent approximately two hours searching the government-run Center for Medicare Services and National Health Information Center websites for guidance.

15. Plaintiff's investigation confirmed that Defendant was improperly designating its place of service as "Office" instead of "Outpatient Hospital" when it billed

      Medicare Part B. Defendant should have been billing as an "Outpatient Hospital" because it was billing under Boston Medical Center's license, because it was designated by Medicare Part A as an "Outpatient Hospital," and because of its affiliation with Boston Medical Center. By billing in this way, Defendant misled and overbilled the federal government in violation of federal law and regulations.

16. On Friday, March 1, 2013, the information technology servicer for Codman Square and Defendant called Plaintiff and informed her that it was implementing the place of service change in the computer billing system to correct Codman Square's improper Medicare Part B billing practice. The servicer asked Plaintiff whether she wanted it to simultaneously change the Defendant's place of service designation in the computer billing system. Plaintiff instructed the information technology servicer to change the settings so Defendant would make claims for payment as an "Outpatient Hospital" place of service.

17. The following Monday, March 4, 2013, Plaintiff was unable to speak with an outside consultant, Michelle Martin, whom Defendant's President and CEO, Walter Ramos, had instructed Plaintiff to consult on all patient billing matters. Martin was in meetings all morning.

18. Plaintiff consulted Ramos and advised him that there was a problem with the Medicare Part B billing, that Defendant was committing fraud against the federal government, and that she, Ramos, and Martin needed to meet to review the problem and plan corrective measures.

19. Ramos responded to Plaintiff that he was not pleased with Plaintiff speaking with him about the problem and that he would speak with Martin.

20. Plaintiff told Ramos that she had wanted to speak with Martin, but Martin had been in a meeting and she would report the problem to Martin as soon as possible.

21. Later that day, Plaintiff reported the fraud to Martin.

22. Martin told Plaintiff that she wanted "proof" that there was a problem with the Medicare Part B billing, that she did not believe Plaintiff, and that Medicare had never denied Defendant's claims for payment or confronted Defendant on its practice.

23. Plaintiff explained what prompted her inquiry and the results of her investigation to Martin. She also told Martin that Medicare requires that billing errors must be reported to it and corrected within forty-five days.

24. Martin responded to Plaintiff that she would report Plaintiff's concerns to Ramos but would also advise him that Defendant was not billing Medicare Part B improperly.

25. On the evening of March 4, 2013, Plaintiff informed her coworker in patient billing of the change she had directed to the Medicare Part B computer billing system. The coworker immediately reported this to Martin.

26. On March 5, 2013, Plaintiff was summoned to Ramos' office for a meeting. Present in the office were Ramos, Martin, and Mary Irwin, director of Defendant's human resources. Ramos then told Plaintiff to "defend" her action in correcting Defendant's Medicare Part B billing system.

27. After Plaintiff explained her research and investigation, Ramos became very angry and told Plaintiff that her action constituted "insubordination."

28. Ramos immediately placed Plaintiff on unpaid administrative leave. Irwin then escorted Plaintiff to her office, told her to gather her things, and took from Plaintiff her office keys and employment identification. She then escorted Plaintiff out of the building. All of this was distressing and humiliating to Plaintiff.

29. On March 13, 2013, Defendant sent Plaintiff a letter informing her that her employment was being terminated. Defendant states specifically in the termination letter that her termination was because of the "facts regarding the Medicare billing issue," as well as Plaintiff's statements regarding the issue. Defendant noted that Plaintiff's "insubordination" resulted in "a failure for Dorchester House to submit claims."

30. After her termination, Plaintiff learned that Roslindale was notified in 2010 by Medicare Part B that it was improperly billing its place of service as an "Office" rather than "Outpatient Hospital." As a result of this, Roslindale had to refund the federal government approximately $80,000 to re-pay Medicare for its improper billing practices. Roslindale also immediately corrected its improper practice by changing its place of service designation from "Office" to "Outpatient Hospital."

31. After her termination, Plaintiff also learned that Defendant had been wrongfully designating itself as an "Office" in its claims for payment to Medicare Part B since 2011 and continued the practice until Plaintiff corrected the improper designation. This resulted in Defendant having wrongfully submitted to and received from the federal government thousands of dollars in Medicare Part B payments.

32. Upon information and belief, after Plaintiff's termination, Defendant was required to reimburse the federal government for all of its demands for payment submitted to and wrongfully paid by Medicare Part B.

33. As a result of Plaintiff's termination, she has suffered ongoing financial loss, including wages and benefits, emotional distress, and harm to her professional reputation.

COUNT I: VIOLATION OF THE FEDERAL FALSE CLAIMS ACT
31 U.S.C. §§ 3730(h)

34. Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully stated herein.

35. Upon discovering that Defendant was submitting fraudulent claims to Medicare Part B, Plaintiff investigated, inquired of, corrected and reported to Defendant issues concerning Defendant's knowing submission of false or fraudulent claims for payment to the federal government.

36. Defendant knew that Plaintiff was engaging in this course of conduct.

37. Defendant terminated Plaintiff's employment because she engaged in this conduct.

COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

38. Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully stated herein.

39. Defendant terminated Plaintiff's employment because Plaintiff investigated, inquired of, corrected, and reported to her supervisor issues concerning Defendant's knowing submission of false or fraudulent claims for payment to the federal government.

40. Defendant discharged Plaintiff in violation of the Massachusetts and federal government's public policy of encouraging the investigation and reporting of false claims made to the government.

41. As a result of the discharge, Plaintiff has suffered harm.

WHEREFORE, Plaintiff hereby requests the following relief:

    a. That Judgment enter for the Plaintiff;

    b. That Plaintiff be awarded compensatory damages;

    c. That Plaintiff be awarded costs;

    d. That Plaintiff be awarded interest;

    e. That Plaintiff be reinstated pursuant to 31 USC §3730(h)(2);

    f. That Plaintiff be awarded 2 times the amount of back pay, interest, special damages, costs and attorneys' fees under 31 USC §3730(h)(2); and

    g. That this Court order such other relief as it deems meet and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

PLAINTIFF,
By her Attorneys,
BEAUREGARD, BURKE & FRANCO

/s/ Philip N. Beauregard
PHILIP N. BEAUREGARD, BBO # 034870
ADRIENNE CATHERINE H. BEAUREGARD-RHEAUME
BBO # 678889
32 William Street
New Bedford, MA 02740
Tel. No.: 508-993-0333
pbeauregard@bbflawoffices.com
abeauregard@bbflawoffices.com

Dated: 9/4/13