UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
MARYANNE DINEEN,                     )
                                                    )
          Plaintiff,                            )
                                                    )
v.                                                 )          Civil Action No. 13-12200-LTS
                                                    )
DORCHESTER HOUSE                    )
MULTI-SERVICE CENTER, INC.,    )
                                                    )
          Defendant.                         )
_____)

ORDER ON DEFENDANT'S MOTION TO DISMISS COUNT II

January 31, 2014

SOROKIN, C.M.J.

          Defendant Dorchester House Multi-Service Center, Inc. ("DHMC") seeks partial

dismissal of the Complaint (Doc. No. 1) filed against it by the plaintiff, Maryanne Dineen.  For

the reasons that follow, the motion (Doc. No. 16) is ALLOWED, and Count II of the Complaint

is DISMISSED.

I.          BACKGROUND

          The following facts are drawn from Dineen's Complaint.[1]  DHMC is a community health

center.  Doc. No. 1 at ¶ 4.  It is one of five multi-service health centers in Massachusetts that are

associated with Boston Medical Center.  Id.  The other four health centers are as follows: East

Boston Neighborhood Health Center ("East Boston"); South Boston Community Health Center

("South Boston"); Codman Square Health Center ("Codman Square"); and Greater Roslindale

_____
[1] In keeping with the standard of review applicable to motions brought pursuant to Fed. R. Civ. P. 12(b)(6), factual
allegations are recited as if true.  See Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 (1st Cir. 2005).

Medical and Dental Center ("Roslindale") (collectively the "Centers").  Id.  The Centers provide similar services, share common business and billing practices, and bill Medicare Part B under the Boston Medical Center hospital license.  Id. at ¶ 5.  Because of their nearly identical requirements, DHMC and Codman Square together pay a third party servicer ("Servicer") to manage their grant writing and information technology needs, including their computer billing systems.  Id. at ¶ 6.

In 2001, DHMC hired Dineen as a patients account manager.  Id. at ¶ 7.  Dineen was promoted to Director of Patient Accounts in 2008.  Id.  Her duties were to coordinate all patient-related billing functions and assist in billing submissions to Medicare Part B.  Id.  Dineen's personnel file reflects consistently positive reviews of her work.  Id. at ¶ 8.

On February 28, 2013, the patient account manager of Codman Square called Dineen to discuss certain billing practices under scrutiny by Medicare Part B.  Id. at ¶ 9.  In particular, Codman Square had submitted claims which, according to a Medicare Part B representative, improperly designated Codman Square's "place of service" as "Office," rather than "Outpatient Hospital."  Id. at ¶¶ 10, 11.  Purportedly, Codman Square should have billed as an "Outpatient Hospital" because it was affiliated with Boston Medical Center and was billing under the Boston Medical Center license.  Id. at ¶ 11.  The Medicare Part B representative told Codman Square that its improper "place of service" designation constituted fraud because "Offices" receive higher payments for services than "Outpatient Hospitals."  Id. at ¶ 12.  To avoid penalties, Codman Square was instructed to correct the practice and self-report the erroneous billing to the federal government.  Id.

Having received this information, Dineen reviewed DHMC's Medicare Part B claims for payment and discovered that DHMC was designating its place of service as "Office," and that it

2

had submitted claims to Medicare Part B using that designation.  Id. at ¶ 13.  Dineen then

undertook an investigation as to whether DHMC's Medicare Part B billing practices were

fraudulent.  Id. at ¶ 14.  After searching government websites on the Internet and conferring with

two of the remaining Centers, East Boston and South Boston, which were billing Medicare Part

B as Outpatient Hospitals, Dineen concluded that DHMC's designation as "Office" was

improper and had resulted in DHMC overbilling the federal government.  Id. at ¶¶ 14, 15.

On March 1, 2013, the Servicer informed Dineen that it was updating Codman Square's

computer billing system to change the "place of service" to "Outpatient Hospital."  Id. at ¶ 16.

Dineen instructed the Servicer to implement the same change for DHMC.  Id.

Subsequently, Dineen consulted with Walter Ramos, President and CEO of DHMC,

apprised him of her findings regarding the billing system, and advised him that DHMC was

committing fraud against the federal government.  Id. at ¶ 18.  She sought a meeting with Ramos

and Michelle Martin, an outside consultant on all patient billing matters, and later that day,

reported the matter directly to Martin.  Id. at ¶¶ 17, 18, 21.  Martin indicated she would report

Dineen's concerns to Ramos, but would advise him that DHMC was not billing Medicare Part B

improperly.  Id. at ¶ 24.

On March 4, 2013, Dineen told a co-worker that she had directed the Servicer to make

the "place of service" change in the computer billing system.  Id. at ¶ 25.  The co-worker

reported this to Martin.  Id.  The next day, Ramos convened a meeting at which he asked Dineen

to defend her actions in changing DHMC's Medicare Part B billing system.  Id. at ¶ 26.  After

Dineen explained her research and investigation, Ramos characterized her actions as

"insubordination" and placed Dineen on unpaid administrative leave.  Id. at ¶¶ 27, 28.  On March

13, 2013, DHMC sent Dineen a letter terminating her employment due to "facts regarding the Medicare billing issue" in addition to Dineen's statements regarding the issue. Id. at ¶ 29.

On September 5, 2013, Dineen filed a two-count Complaint in this Court for violation of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3730(h) (Count I), and wrongful termination in violation of public policy (Count II). Doc. No. 1. Thereafter, DHMC moved to dismiss Count II, Doc. Nos. 16-17, and Dineen filed an opposition, Doc. Nos. 21-22. The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. No. 7.

II.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[]." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "[F]actual allegations" must be separated from "conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief." Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir. 2013) (internal quotations omitted). This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal

4

theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil

Corp., 851 F.2d 513, 515 (1st Cir. 1988)) (internal quotation marks omitted).

   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  A court's

assessment of the pleadings is "context-specific" requiring "the reviewing court to draw on its

judicial experience and common sense."  Id. at 679; accord Maldonado v. Fontanes, 568 F.3d

263, 268 (1st Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' –

'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

III.   DISCUSSION

   DHMC argues that Dineen's wrongful termination state tort claim should be dismissed

because: (1) Dineen complained only internally about DHMC's alleged fraud on Medicare Part

B, and therefore, no public policy was implicated; and (2) Dineen has an adequate statutory

remedy for her alleged retaliatory termination, thereby barring her state common law wrongful

termination claim.  Dineen responds that her internal complaints can, and do, implicate a

recognized public policy, and that the FCA neither preempts Massachusetts common law, nor

provides the same redress available for wrongful termination.

   In Massachusetts, "[t]he general rule is that an employment-at-will contract can be

terminated at any time for any reason or for no reason at all."[2]  U.S. ex rel. Provuncher v.

---

[2] Dineen does not allege that she was other than an at-will employee of DHMC.  "In Massachusetts, employment is presumed to be at-will unless there exists an express or implied contract governing its terms and conditions."  Day v. Staples, Inc., 555 F.3d 42, 58 (1st Cir. 2009).

Angioscore, Inc., No. 09-12176-RGS, 2012 WL 1514844, at *7 (D. Mass. May 1, 2012) (quoting

Folmsbee v. Tech Tool Grinding & Supply, Inc., 417 Mass. 388, 394 (1994)).  As an exception

to the general rule, the Massachusetts Supreme Judicial Court has recognized that "an at-will

employee has a cause of action for wrongful termination only if the termination violates a clearly

established public policy."  King v. Driscoll, 418 Mass. 576, 582 (1994) (citing Flesner v.

Technical Commc'ns Corp., 410 Mass. 805, 810 (1991)).  As a starting point, "[r]edress is

available for employees who are terminated for asserting a legally guaranteed right (e.g., filing

workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for

refusing to do that which the law forbids (e.g., committing perjury)."  Smith-Pfeffer v.

Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149-50 (1989).  Discharge of

an employee in retaliation for his cooperation with a law enforcement investigation concerning

his employer, also can be actionable.  See Wright v. Shriners Hosp. for Crippled Children, 412

Mass. 469, 473 (1992) (citing Flesner, 410 Mass. at 811).

While the Supreme Judicial Court "consistently has interpreted the public policy

exception narrowly[]" so as not to "'convert the general rule . . . into a rule that requires just

cause to terminate an at-will employee[,]'"  King, 418 Mass. at 582 (quoting Smith-Pfeffer, 404

Mass. at 150), the Supreme Judicial Court has stated: "We think that the reasons for imposing

liability in the categories of cases set forth in Smith-Pfeffer also justify legal redress in certain

circumstances for employees terminated for performing important public deeds, even though the

law does not absolutely require the performance of such a deed."  Flesner, 410 Mass. at 810.

The Supreme Judicial Court's example of such a situation that "may" fall into this category:

"'Whistleblowing.'"  Id. at 810 n.3 (citing Mello v. Stop & Shop Cos., Inc., 402 Mass. 555, 560

n.6 (1988)); Korb v. Raytheon Corp., 410 Mass. 581, 584 n.3 (1991).

6

The policy that gives rise to the exception, the Supreme Judicial Court has suggested, may be a federal, as well as state, policy.  See Fairneny v. Savogran Co., 422 Mass. 469, 471-72 (1996) (citing GTE Products Corp. v. Stewart, 421 Mass. 22, 33 (1995)) (assuming, without deciding, that discharge of employee in retaliation for carrying out fiduciary duty in connection with plan governed by ERISA would be recognized as wrongful termination — though preempted by ERISA).  The First Circuit has concluded that the Supreme Judicial Court would treat federal law in the same manner as state law in the public policy analysis.  See Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 45-46 (1st Cir. 1999).

While neither the Massachusetts Appeals Court nor the Supreme Judicial Court have determined that an exception to the common law rule applies in the case of an employee terminated for engaging in activity protected by either the FCA or the corresponding state false claims statute, Mass. Gen. Laws ch. 12, §§ 5A-5O ("MFCA"), for purposes of this decision I assume that the Supreme Judicial Court would do so in light of the above cited case law.  See also Morton St. LLC v. Sheriff of Suffolk Cnty., 453 Mass. 485, 491-92 (2009) (refusing to apply principles of estoppel where public's interest in protecting public fisc supports exception to common law rule).[3]

Nonetheless, Dineen's wrongful termination count must fail.  The Supreme Judicial Court has made clear that "a statute itself may provide that an employer may not terminate an employee for exercising rights conferred by the statute, and in such a case, the common law public policy exception is not called into play."  King, 418 Mass. at 585 n.7 (citing Mello, 402 Mass. at 557 (liability can be found where public policy is expressed by Legislature "unless no

---

[3] DHMC asserts that even if such an exception exists Dineen may not invoke it because her complaints of false claims were lodged internally, only.  In light of my resolution of the defendant's other arguments, I need not resolve this issue.

common law rule is needed because the Legislature has also prescribed a statutory remedy[]")).

Here, the federal statute provides a remedy to Dineen for termination.  31 U.S.C. § 3730(h)

(2010).  Her common law claim not only invokes the same public policy established by the

federal statute, it arises from the very acts giving rise to her federal claim.  Compare Complaint

at ¶ 35 (describing basis for federal claim as "Plaintiff investigated, inquired of, corrected and

reported . . . issues concerning . . . knowing submission of false or fraudulent claims") with ¶ 39

(describing basis for state law claim as "Plaintiff investigated, inquired of, corrected, and

reported . . . issues concerning . . . knowing submission of false or fraudulent claims").  Thus, the

public policy exception, to borrow the Supreme Judicial Court's phrase, "is not called into play."

King, 418 Mass. at 585 n.7; see Valerio, 173 F.3d at 46 ("[t]he rationale for implying a private

remedy under the 'public policy exception' to the traditional rule governing at-will employment

contracts is that, unless a remedy is recognized, there is no other way to vindicate such a public

policy[]" (quoting Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 511-12 (1985), aff'd, 397

Mass. 1004 (1986)); Carter v. Tropicana Products Sales, Inc., No. 07-10921-RWZ, 2008 WL

190791, at *2 (D. Mass. Jan. 4, 2008) (Zobel, J).

      Dineen asserts, however, that the common law exception is inapplicable only when the

available statutory remedies are comprehensive and adequate.  There are several problems with

this position. First, the federal statute appears to provide a comprehensive and adequate set of

remedies.  It provides that an employee "shall be entitled to all relief necessary to make that

employee . . . whole" and authorizes specifically a reasonably robust set of remedies:

"reinstatement with the same seniority status that employee, contractor, or agent would have had

but for the discrimination, 2 times the amount of back pay, interest on the back pay, and

compensation for any special damages sustained as a result of the discrimination, including

litigation costs and reasonable attorneys' fees."  31 U.S.C. § 3730(h)(1)-(2).[4]  Second, the

Supreme Judicial Court, the final arbiter of the contours of the exception to the common law

rule, never imposed the term "comprehensive" as a precondition.  See King, 418 Mass. at 585

n.7.  Third, the authority upon which Dineen relies, Briones v. Ashland, Inc., 164 F. Supp. 2d

228 (D. Mass. 2001), touched only briefly upon the topic and, in the teeth of the Supreme

Judicial Court's pronouncements and the terms of the FCA, is not controlling authority on the

question.[5]  Fourth, another judge of this Court, after a detailed analysis of the law, rejected the

contention that statutory limitations on the available remedies requires allowing a common law

claim:

> More important, the proper inquiry is not whether the remedial statute provides a
> petitioner with all of the remedies that might be available at common law. A legislature
> may validly decide that the proper balance consists in limiting the remedies available to a
> claimant; this should not preclude the statute from being considered "comprehensive."
> Indeed, in *Melley,* the court reasoned that if a common law claim were allowed despite
> the existence of a comprehensive statutory scheme, "serious problems would be posed as
> to the extent of the remedy to be provided" because the statutory scheme and common
> law claim resulted in differing remedies. *Melley,* 475 N.E.2d at 1229; *see also Riley v.
> Cameron and Colby, Inc.,* Civ. No. 86-2287-C, 1987 WL 17537, at *5 (D.Mass. Aug. 31,
> 1987) (common law claim for wrongful termination precluded because of private right of
> action embodied in Mass. Gen. Laws ch. 12, § 11I, which provides only for "injunctive
> and other equitable relief ... including the award of compensatory money damages");
> *Grubba v. Bay St. Abrasives, Div. of Dresser Indus., Inc.,* 803 F .2d 746, 747-48 (1st
> Cir.1986) (same).

Carter, 2008 WL 190791, at *3.  This Court follows Carter as the better-reasoned interpretation

of Massachusetts law.  Finally, Dineen cites United States ex rel. Wilson v. Bristol-Myers

Squibb, Inc., No. 06-12195-MLW, 2013 WL 1331007, at *7 (D. Mass. Mar. 30, 2013) and Joyce

v. GF/Pilgrim, No. 020517B, 2003 WL 22481100 (Mass. Super. Sept. 30, 2003).  Wilson is not

---

[4] The MFCA remedies mirror those set forth in the FCA.  Mass. Gen. Laws ch. 12, § 5J (2012).

[5] Briones Court pointed solely, and obliquely, to Melley, 19 Mass. App. Ct. at 513, in which the court held that
"where, as here, there is a comprehensive remedial statute, the creation of a new common law action based on the
public policy expressed in that statute would interfere with that remedial scheme."  This language is not contrary to
King, which Briones never cited or discussed.

directly on point as it concerned a claim arising under the common law of California not

Massachusetts.  2013 WL 1331007, at *7.  <u>Joyce</u> does not support Dineen's argument; the Court

held that Joyce had "no common-law claim for termination in violation of [] public policy[]"

because the relevant Act creating the public policy "provides a comprehensive remedial scheme

to vindicate the public policy" it established.  2003 WL 22481100, at *7.  Moreover, <u>Joyce</u> cited

a number of cases reaching similar results including <u>Lohnes v. Darwin Partners</u>, No. 021299,

2002 WL 31187688 (Mass. Super. July 23, 2002), in which Justice Gants, then a Justice of the

Superior Court, rejected a common law claim because "[w]ith an adequate statutory remedy,

there is no need for the common-law tort of wrongful termination to protect the public policy."

<u>Id</u>. at *3.  The FCA's remedial scheme for retaliatory discharge is both comprehensive and

adequate.  It sets forth rights through protected conduct, provides judicial procedure for relief,

specifies remedies, and defines a statute of limitations.  <u>See</u> <u>Melley</u>, 19 Mass. App. Ct. at 512-13;

<u>Carter</u>, 2008 WL 190791, at *4.

IV.     <u>CONCLUSION</u>

        For the foregoing reasons, DHMC's Motion to Dismiss (Doc. No. 16) is ALLOWED,

and Count II of Dineen's Complaint is DISMISSED.

                            SO ORDERED.


                            _____/s / Leo T. Sorokin
                            Leo T. Sorokin
                            Chief United States Magistrate Judge