UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARYANNE DINEEN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-12200-LTS |
| DORCHESTER HOUSE MULTI-SERVICE CENTER, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

June 9, 2015

SOROKIN, J.

Plaintiff Dineen brought this action against her former employer, Defendant Dorchester House Multi-Service Center, Inc. At issue is a single count of retaliatory termination in violation of the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(h).[1] Both parties now move for summary judgment. Genuine issues of material fact preclude granting summary judgment to either party. Therefore, both motions are DENIED.

To prevail on a False Claims Act retaliation claim, a plaintiff must show that "(i) he was engaged in conduct protected under the FCA; (ii) the employer had knowledge of this conduct; and (iii) the employer retaliated against the employee because of this conduct." Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 31 (1st Cir. 2012).

---
[1] The Court incorporates, herein, its Order dated January 31, 2014 (Doc. No. 27).

Once a plaintiff sets forth a prima facie case of retaliation:

> the burden then shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action. This imposes merely a burden of production, not one of proof. Thus, if the employer produces evidence of a legitimate nonretaliatory reason, the plaintiff must assume the further burden of showing that the proffered reason is a pretext calculated to mask retaliation.

Id. at 31 (internal citations omitted).

Dineen has set forth a prima facie case. This is a "low bar." Id. at 32. She was alerted to a potential problem in Dorchester's billing of Medicare Part B claims, she performed her own investigation and concluded there was an error regarding the place of service ("POS") code in the billing software which affected certain claims submitted to Medicare, she reported her conclusions to Dorchester on March 4, 2013, she was relegated to unpaid administrative leave the next day,[2] and then shortly thereafter, she was fired. These facts are undisputed.

Dorchester articulates a legitimate nonretaliatory reason for Dineen's termination, supported, inter alia, by its March 13, 2013 letter of termination to Dineen, Doc. No. 60-32, specifically that Dineen was insubordinate in changing the POS code before informing Dorchester of her activities and without first receiving the required authorization. See Harrington, 668 F.3d at 31. However, the temporal proximity of Dineen's problem report to Dorchester on March 4, 2013, to her placement on unpaid administrative leave the next day and her subsequent termination ten days later, is sufficiently close to make out a causation question for a jury both for her prima facie case, see id. at 32 (finding 72 hours between protected activity and alleged retaliation sufficiently close for prima facie causation); Mariani-Colon v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007) (finding temporal proximity of

---

[2] On March 1, 2013, Dineen concluded her investigation and caused the POS code to be changed in the billing system without consulting Michelle Martin. Doc. No. 60-4 at 97-98. Dineen informed Dorchester of her investigation on March 4, but did not tell them she had changed the POS code. Compl. ¶¶ 17-26. By the next day, Dineen's coworker had alerted Dorchester that Dineen had directed the change to the POS code. Compl. ¶¶ 25-26.

two months suffices), and, in light of all the circumstances, her "further burden." Harrington, 668 F.3d at 31.

Two matters require elaboration. First, Dorchester argues that Dineen's activities were not protected under the FCA. Dorchester correctly acknowledges that protected activity of a retaliation claim is "conduct that reasonably could lead to a viable FCA action." U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 236 (1st Cir. 2004), abrogated on other grounds by U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40 (1st Cir. 2009). "[T]his standard is most consistent with the broad interpretation for protected activity under § 3730(h) urged by the legislative history[.]" Id. The protected activity element "does not require the plaintiff to have filed an FCA lawsuit or to have developed a winning claim at the time of the alleged retaliation." Id. Moreover, FCA litigation "does not require proof of specific intent, that is, intent to present false or fraudulent claims to the government." [3] Id. at 225 (citing 31 U.S.C. § 3729(b)).

Here, Dorchester argues Dineen purportedly knew that the POS billing code error, which produced improper claims submitted to Medicare, was a mere mistake and thus she was not engaged in protected conduct. However, Dineen disputes that she knew the billing code error was nothing more than a mistake on Dorchester's part. Rather, Dineen asserts that she understood (from the Codman Square employee) that Medicare had termed the virtually identical error at Codman Square as "fraud," Doc. No. 60-19 at 3, and contends that she told Ramos the error at Dorchester House was fraud. Doc. No. 60-19 at 5. Notably, Dorchester disputes Dineen's factual assertions. Under these circumstances (even without considering the undoing

---

[3] The FCA imposes liability where a false claim is presented to the government with "actual knowledge" of its falsity "or in deliberate ignorance or reckless disregard of the truth or falsity" of the information in the claim. U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 225 (1st Cir. 2004).

of her correction of the error), the Court cannot rule as a matter of law that Dineen's activities were not protected under the FCA.

Second, Dorchester argues they had no notice that Dineen was engaging in activity that reasonably could lead to FCA litigation. As Director of Patient Accounts, Dineen was responsible for the timely and accurate billing of Medicare claims. Therefore, says Dorchester, Dineen has a heightened burden, which she does not meet, to show the knowledge element of an FCA retaliation claim.

The First Circuit agrees with a number of sister circuits, that "where an employee's job responsibilities involve overseeing government billings or payments, his burden of proving that his employer was on notice that he was engaged in protected conduct should be heightened." Maturi v. McLaughlin Research Corp., 413 F.3d 166, 173 (1st Cir. 2005) (finding insufficient notice where president responsible for financial management wrote to chairman, without accusing employer of fraudulent behavior, that "there could be a potential problem" should defense contractor audits uncover dual salary, and asked for help to resolve situation). "Yet, such an employee can put his employer on notice by 'any action which ... [, regardless of his job duties,] would put the employer on notice that [FCA] litigation is a reasonable possibility.'" Id. (quoting Eberhardt v. Integrated Design & Constr., Inc., 167 F.3d 861, 868 (4th Cir. 1999)).

Given that Dineen submits admissible evidence that she told Ramos "that Dorchester House's Medicare Part B billing constituted fraud[,]" Doc. No. 60-19 at 5, and the disputes over Dineen and Martin's respective responsibilities, whether Dineen's responsibilities required heightened notice and whether she satisfied the notice requirement (heightened or not) present genuine issues of material fact.

4

## ORDER

For the foregoing reasons, Dorchester House's Motion for Summary Judgment (Doc. No. 58) and Dineen's Cross-Motion for Summary Judgment (Doc. No. 65) are DENIED.

Dineen's Motion for Reconsideration (Doc. No. 76), also, is DENIED.

The parties shall appear for an initial pretrial conference in Courtroom 13 on June 23, 2015, at 2:00 p.m. At the pretrial conference, the Court will establish a firm date for trial and will inquire as to whether the parties intend to engage in mediation. The Court may be available for trial commencing on July 6, 2015. The parties shall file a joint status report within seven days addressing their availability for trial on that day and any alternate time period they propose for trial.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge